UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| BENIFER MONK | CIVIL ACTION NO. 15-1699 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CHOICE HOTELS INTERNATIONAL SERVICES, CORP. (CLARION INN & SUITES AND CONFERENCE CENTER), ET AL. | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 10) filed by Defendant Choice Hotels International Services, Corp. ("CHI-S"). CHI-S, a franchisor, moves for summary judgment on the grounds that it did not own, control, possess, or otherwise have custody over the hotel wherein Plaintiff Benifer Monk ("Monk") suffered injuries. Additionally, CHI-S maintains that vicarious liability is inapplicable to the instant action. Monk has opposed the Motion for Summary Judgment. See Record Document 17. For the reasons which follow, the Motion for Summary Judgment is **GRANTED** and all of Monk's claims against CHI-S are **DISMISSED**.

**BACKGROUND**

This case involves allegations of premises and vicarious liability under Louisiana law. Monk alleges that on July 25, 2013, she fell due to water on the floor at a hotel located at 1051 Martin Luther King Drive in Monroe, Louisiana ("the Hotel"). See Record Document 1-1 at ¶ 3; Record document 17-1 at ¶ 2.[1] The Hotel was not owned by CHI-S. See

---

[1] In opposing the instant motion, Monk argues that the path for visitors exiting the Hotel's pool area had no protective surface in place to prevent water tracked in from the pool area from pooling on the slick surface of the interior hallway outside the meeting area of the Hotel. See Record Document 17 at 1.

Record Document 10-2 (Affidavit of Stuart Kreindler) at ¶ 8; Record Document 17-1 at ¶ 3. At all times relevant to this case, the Hotel was owned by IQ16-MARTIN LUTHER KING JR DR LLC ("IQ16"), which operated the Hotel under a franchise agreement, dated February 8, 2013, with Choice Hotels International, Inc. ("CHI").  See Record Documents 10-4 at ¶ 4; Record Document 17-1 at ¶ 4; Record Document 10-2 at ¶ 10; Record Document 10-3 (Franchise Agreement).[2]

Stuart Kreindler ("Kreindler"), the assistant general counsel for CHI-S, explained in his affidavit that in exchange for certain fees, CHI granted franchisees such as IQ16 a license to use CHI's trademarks with its designated logo perforation of the Hotel and to operate the Hotel under the name "Clarion Inn and Suites."  See Record Document 10-2 at ¶ 9.  Pertinent provisions of the Franchise Agreement include:

> **6.    Your [Franchisee] Duties.**  You [Franchisee] will during the Term:
>
> . . .
>
>     b. Good Repair. Construct, renovate, operate, furnish, maintain, and advertise the Hotel . . . ; undertake all repairs, cleaning, redecoration, repainting, and replacement of obsolete or outdated Hotel Supplies; and take such other corrective action as is necessary to maintain the Hotel interior and exterior, including any parking areas and food and beverage facilities, in a clean, sound and attractive condition and good repair at all times;
>
> . . .
>
>     d. Compliance with Law; Limited Use. Comply with all local, state and federal laws, rules, regulations or agency orders applicable to you and the construction, renovation, operation, maintenance and promotion of the Hotel . . .;

---

[2] CHI was not named as a defendant. CHI-S and CHI are linked because CHI-S provides management services and employees to CHI. See Record Document 10-2 at ¶ 4.

> . . .
>
> **19. <u>Acknowledgments</u>.**
>
> . . .
>
> c. <u>Control; No Duty; Independent Contractor</u>. You [franchisee] acknowledge and agree that you are solely responsible for exercising ordinary business control over the Hotel . . . . This Agreement does not create a fiduciary relationship between you and us. You are an independent contractor. Nothing in this Agreement makes, or is intended to make, either party an agent, legal representative, subsidiary joint venturer, partner, employee, or servant of the other . . . .

Record Document 10-3.

CHI-S argues that it did not operate, control, possess, or otherwise have custody of the Hotel. See Record Document 10-4 at ¶ 3, citing Record Document 10-2 (Affidavit of Kreindler) at ¶ 11. CHI-S further contends that under the plain language of the Franchise Agreement, IQ16 was solely responsible for operating and maintaining the Hotel and that neither CHI-S nor CHI were required nor permitted to operate or maintain the Hotel premises. See Record Document 10-4 at ¶ 5, citing Record Document 10-3 (Franchise Agreement).[3]

Monk filed this action in the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana. See Record Document 1. She alleges that she sustained injuries to her ankle, which required surgery, and alleges that she will continue "to incur pain, suffering,

---

[3] Monk contests these facts by stating "denied" or "it is denied that Choice Hotels was not involved with the operation of the hotel." Record Document 17-1 at ¶¶ 3, 5. Federal Rule of Civil Procedure 56 (c) requires a party asserting that a fact is genuinely disputed to support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." F.R.C.P. 56(c)(1)(A). Monk has failed to meet this requirement.

mental anguish, and emotional distress" because of the July 2013 incident.  See Record Document 1-1.  On May 14, 2015, Defendant CHI-S removed the case based on diversity jurisdiction to the United States District Court for the Western District of Louisiana.  See Record Document 1.  CHI-S now moves for summary judgment and seeks dismissal of all of Monk's claims against it.  See Record Document 10.

## LAW AND ANALYSIS

**I.  Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010).  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).  If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response.  See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir.1995).

If the movant demonstrates the absence of a genuine dispute of material fact, "the

nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005). Where the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. See Scott v. Harris, 550 U.S. 372, 378, 127 S.Ct. 1769 (2007). In sum, the motion for summary judgment "should be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553.

**II. Analysis.**

CHI-S has moved for summary judgment, arguing that it did not have ownership, care, control or custody of the Hotel such that it could be held responsible under any premises liability theory. See Record Document 10. In response, Monk stated:

> In its Motion, Choice Hotels generally claims that it is merely a franchisor and had no control or garde over the premises. Although it is true that Choice Hotels was a franchisor and ***did not have actual physical custody of the premises at the time***, Choice Hotels focuses on its liability as an alleged owner rather than its vicarious liability for the actions of the owner of the hotel.

Record Document 17 at 2 (emphasis added). CHI-S replied, noting that vicarious liability does not apply when there is an independent contractor relationship and no employer/employee relationship. See Record Document 18. Thus, while it appears that Monk has abandoned her premises liability claim against CHI-S in favor of vicarious liability,

this Court will nonetheless analyze her claims under both premises and vicarious liability.

### A.     Premises Liability.

Monk alleges that CHI-S was negligent in allowing an unreasonably dangerous condition upon its premises and failing to remediate the unreasonably dangerous condition upon its premises. See Record Document 1-1. Under Louisiana law, a premises liability negligence claim is based on one of the following provisions: Louisiana Civil Code Articles 2315, 2317/2317.1, or 2322. Article 2315 states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. Art. 2315(A). Article 2317 provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." La. Civ. Code Ann. art. 2317. More specifically, Article 2317.1 states:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. . . .

La. C.C. Art. 2317.1. Finally, Article 2322 provides that "[t]he owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." La. C.C. Art. 2322.

Monk did not specify the codal article that is the basis of her premises liability claim(s). However, present in all of the premises liability theories is the requirement that the defendant have ownership, care, control, or custody of the subject property. In Carter v. Bd. of Supervisors of La. State University, 459 So. 2d 1263 (La. App. 1 Cir. 1984), the court considered premises liability under Articles 2315 and 2317 and reasoned that "[t]he owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition." See id. at 1265. Likewise, in Venezia v. ConocoPhillips Co., No. 12-2168, 2014 WL 107962 (E.D. La. Jan. 9, 2014), the court discusses Articles 2317 and 2317.1 and reasoned that "the threshold requirement for custodial liability . . . is that the defendant must be in custody of the object that is the cause of the plaintiff's injury." Id. at *10.

In Taylor v. Holiday Inn, Inc., 595 So.2d 735 (La. App. 5 Cir. 1992), the plaintiff slipped and fell on some liquid as she was entering the hotel lounge. She brought a premises liability action against Holiday Inn, Inc. and Kenner Management, Inc. The two defendants had entered into a license agreement and Kenner Management, Inc. was the owner and operator of the hotel. See id. The trial court granted Holiday Inn's motion for summary judgment on the grounds that it had never owned or managed the hotel and did not owe a duty to plaintiff under the terms of the license agreement. See id. The appellate court affirmed, holding:

> [Holiday Inn, Inc.], through its pleadings and affidavits, established that it did not, nor has it ever, owned or managed the property on which the accident occurred. There is no custody or guardianship resting in [Holiday Inn, Inc.]. Rather, [the plaintiff's] relationship to the premises is through Kenner Management, Inc., by a Licensing Agreement whereby [Holiday Inn, Inc.] permits the use of its trademarks, service marks, logos, sign designs and other distinctive characteristics. In exchange, [Holiday Inn, Inc.] receives

> monthly royalty fees. The License Agreement expressly denies any agency relationship between its parties.
>
> . . . [Holiday Inn, Inc.] had no control of the day-to-day management procedures. . . . There is no factual issue as to whether [Holiday Inn, Inc.] had custody or control over the premises in question. The pleadings and supporting affidavits clearly establish it did not.

Id. at 736.

In the instant matter, both the affidavit of Kreindler and the four corners of the Franchise Agreement establish that CHI-S did not own, operate, control or otherwise have custody of the subject property. Kreindler attested that IQ16 owned the Hotel and operated it pursuant to the Franchise Agreement. See Record Document 10-2 at ¶ 10. He further stated that no Choice Hotel entity controlled the daily operations of franchised hotels, including the Hotel at issue in this case. See id. at ¶¶ 11, 13. The Franchise Agreement imposed the sole and exclusive responsibility for maintaining the Hotel on IQ16. See Record Document 10-3 at ¶¶ 6(b), 6(c), and 19(c). Monk has come forward with no competent summary judgment evidence to negate these facts. Simply put, CHI-S had no duty to maintain the Hotel at issue; thus, it owed no legal duty to Monk in relation to her premises liability claim. Summary judgment in favor of CHI-S is, therefore, **GRANTED**.

    **B.    Vicarious Liability.**

Louisiana Civil Code Article 2320 provides:

Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.

. . .

In the above cases, responsibility only attaches, when the masters or employers . . . might have prevented the act which caused the damage, and

> have not done it.
>
> The master is answerable for the offenses and quasi-offenses committed by his servants . . . .

La. C.C. Art. 2320. Monk argues that Choice Hotels had the right to control IQ16, to control the operation of the Hotel, and to require that unreasonably dangerous conditions be remedied, eliminated, or changed at its direction and under its authority. See Record Document 17 at 2.

Based on the plain language of the Franchise Agreement, Monk's reliance on Article 2320 is misplaced. In LeBrane v. Lewis, 292 So. 2d 216 (La. 1974), the Louisiana Supreme Court held that "an employer (master) is liable for a tort committed by his employee (servant) if, at the time, the servant is acting within the scope of his employment," that is, "in the exercise of the functions in which employed." Id. at 217-218 (internal citations omitted). This standard requires an employment relationship and the Franchise Agreement in this case clearly demonstrates no employment relationship between CHI-S and IQ16. See Record Document 10-3 at ¶ 19(c) ("Nothing in this Agreement makes, or is intended to make, either party an agent, legal representative, subsidiary joint venturer, partner, **employee**, or servant of the other") (emphasis added). Moreover, "vicarious liability does not apply when an independent contractor relationship exists." Loftus v. Kuyper, 46,961 (La. App. 2 Cir. 3/14/12), 87 So. 3d 963, 967. The Franchise Agreement clearly provides that IQ16, the franchisee, is an independent contractor. See Record Document 10-3 at ¶ 19(c) ("You are an independent contractor").

Even if this Court were to assume that vicarious liability would encompass the relationship between IQ16 and CHI-S in this case, the Fifth Circuit has held that "district

courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion in opposing summary judgment." <u>De Franceschi v. BAC Home Loans Servicing, L.P.</u>, 477 Fed.Appx. 200, 204 (5th Cir. 2012). Here, Monk asserted premises liability in her complaint and the catchall "any and all other acts of negligence which mat be shown at the trial hereof." Record Document 1-1 at ¶ 4. She raised vicarious liability for the first time in her opposition to CHI-S's Motion for Summary Judgment. This Court finds that it is within its discretion to disregard Monk's assertion of vicarious liability, as the complaint is silent as to any such theory of liability. Summary judgment in favor of CHI-S is, therefore, **GRANTED**.

## CONCLUSION

Based on the forgoing analysis, CHI-S's Motion for Summary Judgment is **GRANTED**, as Monk has failed to show a genuine dispute as to any material fact in relation to premises or vicarious liability. CHI-S is entitled to judgment as a matter of law.

An order consistent with the terms of the instant ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 10th day of August, 2016.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE